UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

LAUREN BICKFORD-BUSHEY,

                    Plaintiff,

        -against-

GREYHOUND LINES, INC. and THE GOODYEAR TIRE
and RUBBER COMPANY,

                    Defendants.

-----------------------------------------------------------------------X

GREYHOUND LINES, INC.,

                    Third-Party Plaintiff,

        v.

MOTOR COACH INDUSTRIES, INC. and UGL
UNICCO, Formerly Known As UNICCO Service
Company,

                    Third-Party Defendants.

-----------------------------------------------------------------------X

**THIRD-PARTY
COMPLAINT**

**Civil Action No.
08 CIV 4465 (PKL)**

**[Related to
06 CIV 13371 (PKL)]**

**JURY TRIAL
DEMANDED**

SIRS:

      Defendant/Third-Party Plaintiff, **GREYHOUND LINES, INC.,** by its attorneys

**FABIANI COHEN & HALL, LLP** as and for its Third-Party Complaint, respectfully alleges

upon information and belief as follows:

      1.     At all times hereinafter mentioned the defendant/third-party plaintiff, Greyhound

Lines, Inc. ("GLI"), was and is a foreign corporation, existing under and by virtue of the laws of

the State of Delaware, with its principle place of business in Dallas, Texas and is authorized to

do business in the State of New York.

      2.     At all times hereinafter mentioned the third-party defendant, Motor Coach

Industries, Inc. ("MCI"), was and is a foreign corporation, existing under and by virtue of the

laws of the State of Delaware, with its principle place of business in Schaumburg, Illinois.

3.    At all times hereinafter mentioned the third-party defendant, MCI, was and is a foreign corporation authorized to do business in the State of New York.

4.    At all times hereinafter mentioned the third-party defendant, MCI, was and is a foreign corporation which by reason of its doing business in the State of New York is subject to personal jurisdiction in the State of New York.

5.    At all times hereinafter mentioned the third-party defendant, MCI, was and is a foreign corporation which is subject to personal jurisdiction in the State of New York by reason of its: transacting business within the State of New York; and/or supplying goods or services in the State of New York; and/or committing a tortuous act within the State of New York; and/or committing a tortuous act outside the State of New York causing injury within the State of New York and regularly doing or soliciting business, or engaging in other persistent course of conduct, or deriving substantial revenue from goods used or consumed or services rendered within the State of New York; and/or committing a tortuous act outside the State of New York causing the injury within the State of New York and expects or should reasonably expect its conduct to have consequences in the State of New York and derives substantial revenue from interstate or international commerce.

6.    The third-party defendant, UGL UNICCO (hereinafter "UNICCO"), was formerly known as UNICCO Service Company.

7.    UNICCO changed its name from UNICCO Service Company to UGL UNICCO on or about November 19, 2007.

8.    At all times hereinafter mentioned the third-party defendant, UNICCO, was and is a foreign corporation, existing under and by virtue of the laws of the State of Massachusetts, with

its principle place of business at 275 Grove Street, Auburndale, MA 02466.

     9.     At all times hereinafter mentioned the third-party defendant, UNICCO, was and is a foreign corporation authorized to do business in the State of New York.

     10.     At all times hereinafter mentioned the third-party defendant, UNICCO, was and is a foreign corporation which by reason of its doing business in the State of New York is subject to personal jurisdiction in the State of New York.

     11.     At all times hereinafter mentioned the third-party defendant, UNICCO, was and is a foreign corporation which is subject to personal jurisdiction in the State of New York by reason of its:  transacting business within the State of New York; and/or supplying goods or services in the State of New York; and/or committing a tortuous act within the State of New York; and/or committing a tortuous act outside the State of New York causing injury within the State of New York and regularly doing or soliciting business, or engaging in other persistent course of conduct, or deriving substantial revenue from goods used or consumed or services rendered within the State of New York; and/or committing a tortuous act outside the State of New York causing the injury within the State of New York and expects or should reasonably expect its conduct to have consequences in the State of New York and derives substantial revenue from interstate or international commerce.

     12.     That heretofore the plaintiff commenced the above entitled action asserting the liability of GLI for damages allegedly sustained by the plaintiff.  A copy of the plaintiff's Complaint is annexed hereto as "Exhibit A".

     13.     The plaintiff generally alleges that on August 28, 2006 a bus (hereinafter referred to as "the subject bus") driven by Ronald Burgess, an employee of GLI, left the roadway of I-87 near Elizabethtown, New York and crashed.  The plaintiff further generally alleges that as a

3

result of said accident she has been damaged.

14.     The plaintiff generally alleges, among other things, in her Complaint that:  the subject bus was a model DL-3 bus; the subject bus and model DL-3 buses had roofs that had an unsafe tendency to collapse; the subject bus and model DL-3 buses did not have seatbelts for passenger use which would cause passengers to be ejected from their seats on the subject bus during an accident; the subject bus and model DL-3 buses had windows of unsafe size and composition which had an unsafe tendency to cause passengers to be ejected from the bus during an accident; and additional allegations as may be contained in the plaintiff's Complaint.

15.     The plaintiff alleges, among other things, in her Complaint that:  the tires on the subject bus at the time of the subject accident were manufactured by The Goodyear Tire & Rubber Company (hereinafter referred to as "Goodyear"); one or more tires on the subject bus at the time of the subject accident (hereinafter referred to as "the subject tires") failed to operate as intended; the subject tires had a history of failure; the subject bus was negligently maintained and the subject tires were faulty; the subject tires were negligently maintained; and additional allegations as may be contained in the plaintiff's Complaint.

16.     The plaintiff generally alleges that the subject accident was due to, among other things, improper and negligent service and maintenance of the subject tires.

17.     The subject bus and all of the parts and components of the subject bus (hereinafter collectively referred to as "the subject bus"), bore VIN #1M8PDMRA6YP052551.

18.     The subject bus was a 2000 MCI Model 102 DL3 bus/coach.

19.     MCI designed the subject bus.

20.     MCI constructed, assembled and manufactured the subject bus.

21.     MCI sold the subject bus.

4

22.    At the time of the August 28, 2006 accident involving the subject bus on I-87 in Elizabethtown, New York, the subject bus was in the same condition it was in at the time the subject bus left MCI's possession.

23.    The subject tires on the subject bus at the time of the subject accident were leased tires having been leased by GLI from Goodyear.

24.    Before the subject accident Goodyear entered into an agreement with Ogden Cisco, Inc. (hereinafter referred to as "Ogden"), dated August 30, 1995, pursuant to which, among other things, Ogden agreed to service and maintain tires that Goodyear leased to bus companies for use on their buses.  GLI begs leave to refer to the August 30, 1995 agreement for its complete terms and conditions.

25.    On or about September 11, 1996, pursuant to an Assignment Agreement, Ogden Cisco, Inc. assigned the above-mentioned August 30, 1995 agreement and all obligations of Ogden Cisco, Inc. under the above-mentioned August 30, 1995 agreement to UNICCO Service Company.  GLI begs leave to refer to the Assignment Agreement for its complete terms and conditions.

26.    The above-mentioned agreement between Goodyear and UNICCO was in full force and effect on August 28, 2006, at the time of the subject accident, and prior thereto.

27.    Pursuant to the August 30, 1995 agreement referred to above and assigned to UNICCO Service Company on September 11, 1996 (hereinafter referred to as "the tire maintenance agreement"), UNICCO agreed to, among other things, service and maintain Goodyear tires that were leased by GLI and used on GLI buses including the subject tires.

28.    GLI is an intended third-party beneficiary of the tire maintenance agreement and is referred to as "Operator" in the tire maintenance agreement.

5

29.     Pursuant to the tire maintenance agreement UNICCO was, among other things, responsible for performing various services with respect to the subject tires.

30.     Pursuant to paragraph 12 of the tire maintenance agreement UNICCO was required to provide various services with respect to the subject tires, including but not limited to, mounting and maintaining recommended inflation pressure.

31.     Pursuant to paragraph 12 of the tire maintenance agreement UNICCO was required to ensure that the pressure of the subject tires was kept and maintained at the correct, proper and appropriate level.

32.     Prior to the subject accident the subject tires, which were on the subject bus at the time of the subject accident, were at garage locations where UNICCO employees were present and required to and/or did provide or perform various service(s) in connection with the subject tires.

33.     Pursuant to paragraph 13 of the tire maintenance agreement UNICCO was required to provide "responsible" and "capable" personnel to perform the work, labor and services UNICCO was required to perform pursuant to the tire maintenance agreement.

34.     Pursuant to paragraph 5 of the tire maintenance agreement, UNICCO agreed to "fully indemnify and hold harmless...Operator [Greyhound Lines, Inc.]...from any and all claims, demands, causes of action, damages, losses, and expenses of whatsoever nature...arising out of or related to the breach or failure to perform the contract services, the use by the Contractor [UNICCO] employees of service equipment supplied by Goodyear, or resulting from any negligent act, omission, misconduct, or fault of Contractor [UNICCO], their employees and/or agents.

35.     GLI has previously made demand upon UNICCO that it, among other things,

6

indemnify GLI for all liability, losses, damages, judgments and expenses including attorneys' fees arising out of or relating to the subject accident and the above-captioned action.

36.     UNICCO has failed to indemnify GLI.

37.     GLI has generally denied the plaintiff's allegations against it and its liability to the plaintiff, but notwithstanding such denials is exposed to damage by reason of a possible verdict or judgment. A copy of GLI's Answer to the plaintiff's Complaint is annexed hereto as Exhibit "B".

38.     By reason of the exposure to damage, this impleader is made against the third-party defendant, MCI, by reason of, among other things, MCI's wrongful conduct, acts, omissions, negligence, carelessness, recklessness, breach of contract, breach of warranties and/or strict products liability in connection with, among other things, the design, construction, assembly, fabrication, manufacturer and/or sale of the subject bus.

39.     By reason of the exposure to damage, this impleader is made against the second third-party defendant, UNICCO, by reason of, among other things, UNICCO's wrongful conduct, acts, omissions, negligence, carelessness, recklessness, breach of contract, breach of the tire maintenance agreement, and/or UNICCO's failure to indemnify GLI.

**AS AND FOR A FIRST CAUSE OF ACTION**
**AGAINST THIRD-PARTY DEFENDANT, MCI**

40.     Defendant/third-party plaintiff, GLI, repeats and re-alleges each and every allegation contained in paragraphs numbered "1" through "39" above.

41.     That although defendant/third-party plaintiff, GLI, has generally denied the allegations of wrongdoing asserted against it, nevertheless, should said defendant/third-party plaintiff be found to be liable to the plaintiff, then such liability shall derive from the active and affirmative wrongdoing of third-party defendant, MCI, while any wrongdoing of defendant/third-

party plaintiff will have been passive and secondary only, by reason of which the defendant/third-party plaintiff, GLI, shall be entitled to complete indemnity, common law and/or contractual, from the third-party defendant, MCI, including attorneys' fees and expenses.

42.    That, by reason thereof, defendant/third-party plaintiff, GLI, is entitled to full and complete indemnity from the third-party defendant in the above-captioned action.

## AS AND FOR A SECOND CAUSE OF ACTION
## AGAINST THIRD-PARTY DEFENDANT, MCI

43.    Defendant/third-party plaintiff, GLI, repeats and re-alleges each and every allegation contained in paragraphs numbered "1" through "39" above.

44.    That although defendant/third-party plaintiff, GLI, has generally denied the allegations of wrongdoing asserted against it, nevertheless, if defendant/third-party plaintiff is found to be liable to the plaintiff, and if complete indemnity is not granted in furtherance of the First Cause of Action hereinabove, then defendant/third-party plaintiff, GLI, is, nevertheless, entitled to contribution from third-party defendant, MCI, in proportion to the relative degrees of wrongdoing as between defendant/third-party plaintiff on the one part and the third-party defendant on the other part.

45.    That, by reason thereof, defendant/third-party plaintiff, GLI, is entitled to an allocation of any damages by reason of verdict or judgment in proportion to the degrees of wrongdoing.

## AS AND FOR A THIRD CAUSE OF ACTION
## AGAINST THIRD-PARTY DEFENDANT, MCI

46.    Defendant/third-party plaintiff, GLI, repeats and re-alleges each and every allegation contained in paragraphs numbered "1" through "39" above.

47.    Before the subject accident, the subject bus was leased by GLI from the Bank of

8

Oklahoma, N.A. pursuant to a Master Lease Agreement dated February 16, 2000 (hereinafter referred to as "the Master Lease"). GLI begs leave to refer to the Master Lease at the time of trial.

48.    The Master Lease was in effect at the time of the subject accident.

49.    After the subject accident, and pursuant to the terms of the Master Lease, GLI replaced the subject bus with another bus of the same type and manufacturer that was owned by GLI (hereinafter referred to as "the replacement bus").

50.    Pursuant to the terms of the Master Lease, GLI transferred title of the replacement bus to the Bank of Oklahoma, N.A.

51.    After and since the subject accident, and due to the subject accident, GLI has paid and will continue to pay no-fault benefits.

52.    As a result of all of the foregoing, GLI has been damaged and continues to be damaged, and has sustained loss including but not limited to property damage, economic loss, business interruption, loss of revenue and loss of income.

53.    Defendant/third-party plaintiff, GLI's damages and losses as described above are due to, among other things, MCI's wrongful conduct, acts, omissions, negligence, carelessness, recklessness, breach of contract, breach of warranties and/or strict products liability in connection with, among other things, the design, construction, assembly, fabrication, manufacturer and/or sale of the subject bus.

54.    The amount in controversy pertaining to the damages and loss suffered by GLI exceeds $75,000 exclusive of interest.

55.    Defendant/third-party plaintiff, GLI, has been damaged, and continues to be damaged, by MCI's conduct and is entitled to damages in an amount in excess of $75,000. GLI

9

is entitled to recover all of the damages and losses described above from MCI. GLI is also entitled to interest since the date of the subject accident.

## AS AND FOR A FOURTH CAUSE OF ACTION
## AGAINST THIRD-PARTY DEFENDANT, UNICCO
## (INDEMNITY)

56.    Defendant/third-party plaintiff, GLI, repeats and re-alleges each and every allegation contained in paragraphs numbered "1" through "39" above.

57.    That although defendant/third-party plaintiff, GLI, has generally denied the allegations of wrongdoing asserted against it, nevertheless, should said defendant/third-party plaintiff be found to be liable to the plaintiff, then such liability shall derive from the active and affirmative wrongdoing of third-party defendant, UNICCO, while any wrongdoing of defendant/third-party plaintiff will have been passive and secondary only, by reason of which the defendant/third-party plaintiff, GLI, shall be entitled to partial and/or complete indemnity, common law and/or contractual, including attorneys' fees and litigation expenses, from the third-party defendant, UNICCO.

58.    That, by reason thereof, defendant/third-party plaintiff, GLI, is entitled to partial and/or full and complete indemnity from the third-party defendant, UNICCO, in the above-captioned action, including attorneys' fees and litigation expenses.

## AS AND FOR A FIFTH CAUSE OF ACTION
## AGAINST THIRD-PARTY DEFENDANT, UNICCO
## (CONTRIBUTION)

59.    Defendant/third-party plaintiff, GLI, repeats and re-alleges each and every allegation contained in paragraphs numbered "1" through "39" above.

60.    That although defendant/third-party plaintiff, GLI, has generally denied the allegations of wrongdoing asserted against it, nevertheless, if defendant/third-party plaintiff is

10

found to be liable to the plaintiff, and/or if partial and/or complete indemnity is not granted in furtherance of the Fourth Cause of Action hereinabove, then defendant/third-party plaintiff, GLI, is, nevertheless, entitled to contribution from third-party defendant, UNICCO, in proportion to the relative degrees of wrongdoing as between defendant/third-party plaintiff on the one part and the third-party defendant on the other part.

61.    That, by reason thereof, defendant/third-party plaintiff, GLI, is entitled to an allocation of any damages by reason of verdict or judgment in proportion to the degrees of wrongdoing.

### AS AND FOR A SIXTH CAUSE OF ACTION
### AGAINST THIRD-PARTY DEFENDANT, UNICCO

62.    Defendant/third-party plaintiff, GLI, repeats and re-alleges each and every allegation contained in paragraphs numbered "1" through "39" above.

63.    Before the subject accident, the subject bus was leased by GLI from the Bank of Oklahoma, N.A. pursuant to a Master Lease Agreement dated February 16, 2000 (hereinafter referred to as "the Master Lease"). GLI begs leave to refer to the Master Lease at the time of trial.

64.    The Master Lease was in effect at the time of the subject accident.

65.    After the subject accident, and pursuant to the terms of the Master Lease, GLI replaced the subject bus with another bus of the same type and manufacturer that was owned by GLI (hereinafter referred to as "the replacement bus").

66.    Pursuant to the terms of the Master Lease, GLI transferred title of the replacement bus to the Bank of Oklahoma, N.A.

67.    After and since the subject accident, and due to the subject accident, GLI has paid and will continue to pay no-fault benefits.

11

68.    As a result of all of the foregoing, GLI has been damaged and continues to be damaged, and has sustained loss including but not limited to property damage, economic loss, business interruption, loss of revenue and loss of income.

69.    Defendant/third-party plaintiff, GLI's damages and losses as described above are due to, among other things, UNICCO's wrongful conduct, acts, omissions, negligence, carelessness, recklessness, breach of contract and/or breach of the tire maintenance agreement.

70.    The amount in controversy pertaining to the damages and loss suffered by GLI exceeds $75,000 exclusive of interest.

71.    Defendant/third-party plaintiff, GLI, has been damaged, and continues to be damaged, by UNICCO's conduct and is entitled to damages in an amount in excess of $75,000. GLI is entitled to recover all of the damages and losses described above from UNICCO.  GLI is also entitled to interest since the date of the subject accident.

**WHEREFORE,** the defendant/third-party plaintiff, GREYHOUND LINES INC., demands judgment against third-party defendants, MOTOR COACH INDUSTRIES, INC. and UGL UNICCO, Formerly Known As UNICCO Service Company, as follows:

1.    For indemnity on the First Cause of Action;

2.    For contribution on the Second Cause of Action;

3.    For damages in excess of the $75,000 jurisdictional limit of this Court on the Third Cause of Action, plus interest.

4.    For indemnity on the Fourth Cause of Action;

5.    For contribution on the Fifth Cause of Action;

6.    For damages in excess of the $75,000 jurisdictional limit of this Court on the Sixth Cause of Action, plus interest.

12

Together with costs, disbursements, fees and expenses, and such damages as are

allowable under the law, inclusive of counsel fees.

Dated:       New York, New York
             June 4, 2008

                                    Yours, etc.,

                                    FABIANI COHEN & HALL, LLP

                                    _____
                                    Kevin B. Pollak (KBP 6098)
                                    Attorneys for Defendant/Third-Party Plaintiff
                                    GREYHOUND LINES, INC.
                                    570 Lexington Avenue, 4th Floor
                                    New York, New York  10022
                                    (212) 644-4420

TO:    MOTOR COACH INDUSTRIES, INC.
       1700 East Golf Road
       Schaumburg, Illinois  60173
       (866) 624-2622

       UGL UNICCO
       275 Grove Street
       Auburndale, MA  02466

387331.1

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LAUREN BICKFORD-BUSHEY

                    Plaintiff,

vs.                                    1:08-cv-04465-PKL

GREYHOUND LINES, INC,
and THE GOODYEAR TIRE and
RUBBER COMPANY

                    Defendants.

---

### COMPLAINT WITH JURY DEMAND

Comes now the Plaintiff, Lauren Bickford-Bushey, by and through her attorney,

Mark A. Schneider, and complains against the Defendants as follows:

### PARTIES

1.    The Plaintiff, Lauren Bickford-Bushey, is a resident of Waterford, Saratoga

County, New York.

2.    The Defendant, Greyhound Lines, Inc (hereinafter "Greyhound") is a Delaware

corporation with its principal place of business in the state of Texas.

3.    Upon information and belief, the Defendant, Greyhound, is licensed to transact

business in New York and conducts substantial business in the state of New York, and, in

particular, in the Southern District of New York.

4.    The Defendant, The Goodyear Tire and Rubber Company (hereinafter

"Goodyear") is an Ohio corporation with its principal place of business in Ohio.

5.      Upon information and belief, the Defendant, Goodyear, is licensed to transact business in New York and conducts substantial business in the state of New York, and, in particular, in the Southern District of New York.

**JURISDICTION AND VENUE**

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. 1332 as there is complete diversity of citizenship between the Plaintiff and all of the Defendants, and the matter in controversy exceeds $75,000, exclusive of interest and costs.

7.      This court has *in personam* jurisdiction over both Defendants because at all times relevant herein both defendants were foreign corporations for profit that regularly and continually conduct business in the State of New York.  As such, there are sufficient contacts between the Defendants and the State of New York

8.      Venue is proper in this Court pursuant to 28 U.S.C. 1391, as the Defendants conduct substantial business in this District and are subject to jurisdiction in this District. The Defendants are also subject to New York long-arm jurisdiction as non-domiciliaries that committed tortuous acts within New York State.

**GENERAL ALLEGATIONS**

9.      At all times relevant herein, Defendant Greyhound was in the business of owning, leasing, operating, managing, controlling, inspecting and maintaining commercial passenger buses by and through its servants, employees and agents, including the bus on which the Plaintiff was injured as described herein.

10.     At all times relevant herein, Defendant Goodyear was in the business of designing, developing, inspecting, marketing, selling and leasing tires for commercial buses and maintaining, by and through its servants, agents and employees, tires for

commercial buses, including the bus on which the Plaintiff was injured as described herein.

11.    At all times relevant herein, Greyhound was operating as a common carrier, in that its buses were made available for transportation to the general public.

12.    At all times relevant herein, Ronald Burgess was an employee of Greyhound as a driver. As such, his duties included the operation of buses owned, leased, managed, controlled and maintained by the Defendants with the Defendants' permission and within the scope of his employment.

13.    On or about August 28, 2006 Greyhound owned, leased, maintained, managed, controlled and/or operated a 2000 MCI model DL-3 bus which was labeled as a "Greyhound" bus which may have also been known as Greyhound Bus Number 4014 and bearing Texas registration number R7HW58 (hereinafter "the subject bus").

14.    On or about August 28, 2006, the tires on the subject bus were designed, developed, marketed, owned by and leased to Greyhound by Goodyear.

15.    On or about August 28, 2006, Ronald Burgess was operating the subject bus on its route between New York City and Montreal, Quebec, Canada within the scope of his employment with Greyhound and with the permission of Greyhound, and as such was responsible for the safety of the passengers on the subject bus.

16.    On or about August 28, 2006, the Plaintiff boarded the subject bus at the Saratoga Springs stop, subject to a ticket which was sold to her by Greyhound and for which she paid the required fare.

17.    On or about August 28, 2006, after boarding the subject bus at the Saratoga Springs stop, the bus re-entered Interstate 87 and continued north.

18.    Upon information and belief, on or about August 28, 2006 at approximately 6:45 pm, a tire on the subject bus failed to operate as intended.

19.    At and just prior to the time and place referenced in paragraph 18, Ronald Burgess was driving the subject bus at a rate of speed in excess of the posted speed limit and otherwise failing to prudently perform his duties as driver.

20.    At the time and place referenced in paragraph 18, Ronald Burgess lost control of the subject bus, causing it to leave the roadway, strike a guard rail, and overturn multiple times, during which the Plaintiff was ejected from the bus.

21.    As a result of the accident, the Plaintiff suffered serious injuries as defined by the New York Insurance Law.

22.    Upon information and belief, on and before August 28, 2006, Greyhound was aware that their model DL-3 buses had a proclivity toward tire failure, which could result in loss of control, crashes, rollovers, and other related dangers.

23.    Upon information and belief, on or before August 28, 2006, Goodyear was aware of the proclivity of the tires they designed, developed, manufactured, owned, marketed, distributed and leased to Greyhound had for failure, and Goodyear knew that such failure could result in loss of control, crashes, rollovers, and other related dangers.

24.    Upon information and belief, on and before August 28, 2006, Greyhound knowingly purchased, leased, employed, operated, and/or used model DL-3 buses, including the subject bus, with roofs that had an unsafe tendency to collapse in a rollover or other impact.

25.    Upon information and belief, on and before August 28, 2006, Greyhound knowingly purchased, leased, employed, operated, and/or used model DL-3 buses, including the subject bus, even though they lacked passenger seatbelts.

26.    On and before August 28, 2006, Greyhound knowingly and voluntarily chose not to install seatbelts in its DL-3 buses, including the subject bus, even though it knew that the lack of seatbelts could cause passengers to be ejected from their seats, and in some cases the bus, in the event of an accident and/or rollover.

27.    Upon information and belief, on or before August 28, 2006, Greyhound knowingly purchased, leased, employed, operated, and/or used model DL-3 buses, including the subject bus, with windows of an unsafe size and composition which had an unsafe tendency to cause passengers to be ejected from the bus in a rollover.

**FIRST CAUSE OF ACTION – NEGLIGENCE AGAINST GREYHOUND**

28.    The Plaintiff realleges paragraphs 1-27 as if set forth at length herein.

29.    Greyhound and its employees, agents, and/or servants had a duty to the Plaintiff, pursuant to common law and statutory/regulatory law, to use reasonable care in the ownership, operation, maintenance and control of the bus and in addition, as a common carrier also had a duty to exercise the highest standard of care and to provide safe transport to all passengers on the subject bus.

30.    Greyhound breached its duties to the Plaintiff by negligently operating, maintaining, managing, controlling, inspecting and leasing the subject bus; by negligently hiring, supervising, training, communicating with and educating their employees, representatives and agents who operated, controlled, managed and maintained the subject bus, including their failure to monitor any incidences of their employees operating their

buses at excessive speeds; and by recklessly ignoring the history of safety deficiencies in the model DL-3 buses, failing to take remedial measures with respect to the faulty tires, failing to take remedial measures with respect to the frangible roofs on the model DL-3 buses, failing to take remedial measures with respect to the unsafe size and composition of the windows on the model DL-3 buses and continuing to operate said buses without seatbelts.

31.    A proximate cause of the crash was Greyhound's negligence, its reckless disregard of the care required to be exercised by law and common practice for the safety of its passengers, and other culpable conduct, through its agents, employees and representatives, without any fault or negligence on the part of the Plaintiff contributing thereto.

32.    Ronald Burgess violated the aforementioned duties by not driving at a speed that would have permitted him to better control the subject bus, failing to otherwise use reasonable care in the operation of the subject bus, and was otherwise negligent, all of which violated common law and statutory/regulatory laws and proximately resulted in the accident which injured the Plaintiff.

33.    Greyhound is vicariously liable for the actions of Ronald Burgess pursuant to the doctrine of *respondeat superior* as well as section 388 of the New York Vehicle and Traffic Law.

34.    The accident was caused solely by the Defendants' negligence, recklessness, and other conduct by and through their employees, agents, and servants, and the Plaintiff is not comparatively negligent in any manner with regard to the accident or her injuries. The Plaintiff reserves the right to assert the doctrine of *Res Ipsa Loquitur*.

35.     As a proximate result of the conduct of Greyhound described herein, the Plaintiff was seriously injured as defined by New York Insurance Law and has suffered the following damages, which exceed the sum of $75,000, exclusive of interest and costs:

    a.   Past, present and future medical bills;

    b.   Past, present and future pain and suffering;

    c.   Past, present and future psychiatric and emotional damages;

    d.   Past, present and future cognitive impairment;

    e.   Past, present and future lost wages and loss of earning capacity;

    f.   Past, present and future loss of ability to enjoy life.

WHEREFORE, the Plaintiff, Lauren Bickford-Bushey, demands that judgment be entered in her favor and against Greyhound in an amount in excess of seventy five thousand dollars ($75,000) that will provide fair compensation for the Plaintiff's injuries, and other damages, together with prejudgment and post judgment interest, her attorney fees and costs to the extent provided by law, as well as any other relief that the Court deems appropriate.

### SECOND CAUSE OF ACTION – NEGLIGENCE AGAINST GOODYEAR

36.     The Plaintiff realleges paragraphs 1-35 as if set forth at length herein.

37.     Upon information and belief, Goodyear had a contractual agreement to provide tires to Greyhound for use on Greyhound buses, including the subject bus.

38.     Goodyear had a duty to exercise reasonable care and to provide a safe product to all passengers on buses using its subject tire.

39.     Goodyear was negligent in the design, manufacture, assembly, testing, labeling, instruction and/or inspection and warnings of and related to the tire, its component parts

and/or equipment, and further sold, supplied, distributed, promoted and/or placed into the market and/or stream of commerce, defective and dangerous products without proper testing, inspection or warning thereof.

40.    In failing to exercise reasonable care, Goodyear launched a force or instrument of harm into the stream of commerce, upon which Plaintiffs detrimentally relied.

41.    On August 28, 2006, the subject tire was being used for its intended purpose.

42.    The subject tire was unfit for its intended purpose.

43.    Goodyear breached the duties of care it owed to the Plaintiff by negligently designing, developing, manufacturing, maintaining, managing, controlling and leasing the subject tire; by negligently hiring, supervising, training, communicating with and educating its employees, representatives and agents who designed, developed, manufactured, managed, controlled, maintained and leased the subject tire; and by recklessly ignoring the history their tires had of failure and continuing to lease said tires.

44.    As a proximate result of the conduct of Goodyear described herein, the Plaintiff was seriously injured as defined by New York Insurance Law and has suffered the following damages, which exceed the sum of $75,000, exclusive of interest and costs:

     a. Past, present and future medical bills;

     b. Past, present and future pain and suffering;

     c. Past, present and future psychiatric and emotional damages;

     d. Past, present and future cognitive impairment;

     e. Past, present and future lost wages and loss of earning capacity;

     f. Past, present and future loss of ability to enjoy life.

WHEREFORE, the Plaintiff, Lauren Bickford-Bushey, demands that judgment be entered in her favor and against Goodyear in an amount in excess of seventy five thousand dollars ($75,000) that will provide fair compensation for the Plaintiff's injuries, and other damages, together with prejudgment and post judgment interest, her attorney fees and costs to the extent provided by law, as well as any other relief that the Court deems appropriate.

## THIRD CAUSE OF ACTION – STRICT PRODUCT LIABILITY

45. The Plaintiff realleges paragraphs 1-44 as if set forth at length herein.

46. The subject tire was defectively and improperly designed, manufactured, assembled and/or labeled by Goodyear.

47. The subject tire was sold, distributed and marketed in a defective and/or unreasonably dangerous condition and/or was unfit for its intended use and placed into the stream of commerce by Goodyear.

48. Goodyear failed to warn of the propensities of its tire to fail under conditions similar to those encountered at the date and time of the accident.

49. At the time that the subject tire left Goodyear's control it was defective, unreasonably dangerous and/or unfit for its intended use.

50. The subject tire had not been altered, modified or changed in any form or fashion prior to its use on August 28, 2006.

51. As a proximate result of the defective, unreasonably dangerous and/or unfit condition of the subject tire, the Plaintiff was seriously injured as defined by New York Insurance Law and has suffered the following damages, which exceed the sum of $75,000, exclusive of interest and costs:

9

a.  Past, present and future medical bills;

b.  Past, present and future pain and suffering;

c.  Past, present and future psychiatric and emotional damages;

d.  Past, present and future cognitive impairment;

e.  Past, present and future lost wages and loss of earning capacity;

f.  Past, present and future loss of ability to enjoy life.

WHEREFORE, the Plaintiff, Lauren Bickford-Bushey, demands that judgment be entered in her favor and against Goodyear in an amount in excess of seventy five thousand dollars ($75,000) that will provide fair compensation for the Plaintiff's injuries, and other damages, together with prejudgment and post judgment interest, her attorney fees and costs to the extent provided by law, as well as any other relief that the Court deems appropriate.

## FOURTH CAUSE OF ACTION – BREACH OF WARRANTIES

52.  The Plaintiff realleges paragraphs 1-51 as if set forth at length herein.

53.  Greyhound expressly and impliedly warranted that it would provide safe and appropriate common carriage bus transportation for its fare paying passengers, using bus operation techniques that would assure the reasonable and safe transportation of passengers, including Plaintiff, and that its drivers, buses, and equipment were reasonably fit for their intended and foreseeable uses and purposes.

54.  Greyhound breached its warranties by failing to provide safe, reliable, and appropriate common carriage bus transportation for its fare paying passengers when the subject bus crashed as described herein.

10

55.     Goodyear expressly and impliedly warranted that it would provide, design, develop, manufacture, maintain, own and lease safe, reliable and appropriate tires, using techniques that would assure the safety of any users of its product, including the passenger Plaintiffs, and that its tires and equipment were reasonably fit for their intended and foreseeable uses and purposes.

56.     Goodyear breached its express and implied warranties by failing to provide safe, reliable and appropriate tires for passengers on the subject bus when the subject tire failed, causing the bus to veer off the road and contributing to the crash during the trip from New York City to Montreal on August 28, 2006.

57.     As a direct and proximate result of the Defendants' breach of their warranties, the Plaintiff was seriously injured as defined by New York Insurance Law and has suffered the following damages, which exceed the sum of $75,000, exclusive of interest and costs:

     a.  Past, present and future medical bills;

     b.  Past, present and future pain and suffering;

     c.  Past, present and future psychiatric and emotional damages;

     d.  Past, present and future cognitive impairment;

     e.  Past, present and future lost wages and loss of earning capacity;

     f.  Past, present and future loss of ability to enjoy life.

WHEREFORE, the Plaintiff, Lauren Bickford-Bushey, demands that judgment be entered in her favor and against the Defendants in an amount in excess of seventy five thousand dollars ($75,000) that will provide fair compensation for the Plaintiff's injuries, and other damages, together with prejudgment and post judgment interest, her attorney

fees and costs to the extent provided by law, as well as any other relief that the Court deems appropriate.

### FIFTH CAUSE OF ACTION – PUNITIVE DAMAGES

58.    The Plaintiff realleges paragraphs 1-57 as if set forth at length herein.

59.    As a direct and proximate result of the reckless, wanton, and willful conduct of Greyhound and its employees, agents, and/or servants as described herein, including, but not limited to, intentionally ignoring the history of tire failure in the model DL-3 buses, intentionally failing to take remedial measures with respect to the faulty tires, intentionally failing to take remedial measures with respect to the frangible roofs on the model DL-3 buses, intentionally failing to take remedial measures with respect to the unsafe size and composition of the windows on the model DL-3 buses and continuing to operate said buses without seatbelts, the lack of training it provided to its drivers, grossly deficient vehicle inspection and maintenance, and the grossly deficient vehicle operation, including the gross negligence of Greyhound's driver in driving at an excessive rate of speed during the trip from New York City to Montreal on August 28, 2006, the Plaintiff was seriously injured as defined by New York Insurance Law and has suffered the following damages, which exceed the sum of $75,000, exclusive of interest and costs:

  a.   Past, present and future medical bills;

  b.   Past, present and future pain and suffering;

  c.   Past, present and future psychiatric and emotional damages;

  d.   Past, present and future cognitive impairment;

  e.   Past, present and future lost wages and loss of earning capacity;

  f.   Past, present and future loss of ability to enjoy life.

60.    As a direct and proximate result of the reckless, wanton and willful misconduct of Goodyear, including its employees, and its gross disregard of the propensity of its tires to fail, the Plaintiff was seriously injured as defined by New York Insurance Law and has suffered the following damages, which exceed the sum of $75,000, exclusive of interest and costs:

      a.    Past, present and future medical bills;

      b.    Past, present and future pain and suffering;

      c.    Past, present and future psychiatric and emotional damages;

      d.    Past, present and future cognitive impairment;

      e.    Past, present and future lost wages and loss of earning capacity;

      f.    Past, present and future loss of ability to enjoy life.

61.    As a result of the aforementioned conduct, the Defendants are liable to the Plaintiff for punitive damages in order to prevent and deter future similar conduct.

WHEREFORE, the Plaintiff, Lauren Bickford-Bushey, demands that judgment be entered in her favor and against the Defendants in an amount in excess of seventy five thousand dollars ($75,000) that will provide fair compensation for the Plaintiff's injuries, and punitive and other damages, together with prejudgment and post judgment interest, her attorney fees and costs to the extent provided by law, as well as any other relief that the Court deems appropriate.

## JURY DEMAND

The Plaintiff Demands a Trial by Jury on All Issues So Triable.

Dated: May 8, 2008

13

Respectfully submitted,


   s/Mark A. Schneider            .
Mark A. Schneider, Esq. (MS6666)
Law Office of Mark Schneider
57 Court Street
Plattsburgh, NY 12901
(518) 566-6666
*Counsel for Plaintiff*

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

LAUREN BICKFORD-BUSHEY,                                          **ANSWER**

                                        Plaintiff,              **Civil Action No.
                                                               08 CIV 4465 (PKL)**

              -against-

GREYHOUND LINES, INC. and THE GOODYEAR TIRE                    **[Related to
and RUBBER COMPANY,**                                          06 CIV 13371 (PKL)]**

                                        Defendants.             **JURY TRIAL
                                                               DEMANDED**
------------------------------------------------------------------X

    Defendant, GREYHOUND LINES, INC. ("GREYHOUND"), by its attorneys, FABIANI

COHEN & HALL, LLP, as and for an Answer to the plaintiff's Complaint, sets forth, upon

information and belief, the following:

## PARTIES

    FIRST: Denies knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph No. 1 of the plaintiff's Complaint.

    SECOND: Admits each and every allegation contained in Paragraph No. 2 of the

plaintiff's Complaint.

    THIRD: Denies knowledge or information sufficient to form a belief as to the truth of

the allegations contained in Paragraph No. 3 of the plaintiff's Complaint except admits that the

defendant, Greyhound, is licensed to transact business in the State of New York and conducts

business in the State of New York, and, in particular, in the Southern District of New York.

    FOURTH: Denies knowledge or information sufficient to form a belief as to the truth of

the allegations contained in Paragraph No. 4 of the plaintiff's Complaint.

    FIFTH: Denies knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph No. 5 of the plaintiff's Complaint.

386688.1

## JURISDICTION AND VENUE

SIXTH: Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 6 of the plaintiff's Complaint and respectfully refers all questions of law to the determination of the Trial Court.

SEVENTH: Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 7 of the plaintiff's Complaint except admits that the defendant, Greyhound, is licensed to transact business in the State of New York and conducts business in the State of New York, and, in particular, in the Southern District of New York and respectfully refers all questions of law to the determination of the Trial Court.

EIGHTH: Denies each and every allegation contained in Paragraph No. 8 of the plaintiff's Complaint except admits that the defendant, Greyhound, is licensed to transact business in the State of New York and conducts business in the State of New York, and, in particular, in the Southern District of New York, and respectfully refers all questions of law to the determination of the Trial Court.

## GENERAL ALLEGATIONS

NINTH: Denies each and every allegation contained in Paragraph No. 9 of the plaintiff's Complaint, except admits that Defendant, Greyhound Lines, Inc. was in the business of utilizing buses to transport passengers, including the bus on which the Plaintiff was a passenger at the time of the accident at issue in this litigation.

TENTH: Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 10 of the plaintiff's Complaint.

ELEVENTH: Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 11 of the plaintiff's Complaint except admits that

2

Defendant, Greyhound Lines, Inc. was in the business of utilizing buses to transport passengers, including the bus on which the Plaintiff was a passenger at the time of the accident at issue in this litigation and respectfully refers all questions of law to the determination of the Trial Court.

TWELFTH: Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 12 of the plaintiff's Complaint except admits that on August 28, 2006 and at the time of the accident at issue in this litigation, Ronald Burgess was an employee of Greyhound Lines, Inc., and respectfully refers all questions of law to the determination of the Trial Court.

THIRTEENTH: Denies each and every allegation contained in Paragraph No. 13 of the plaintiff's Complaint, except admits that on or about August 28, 2005, Greyhound Lines, Inc. leased a 2000 MCI model 102DL3 bus bearing Texas registration number R7HW58 (hereinafter "the subject bus").

FOURTEENTH: Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 14 of the plaintiff's Complaint except admits that on August 28, 2006, the tires on the subject bus were leased to Greyhound Lines Inc., by The Goodyear Tire & Rubber Company.

FIFTEENTH: Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 15 of the plaintiff's Complaint except admits that on August 28, 2006 and at the time of the accident at issue in this litigation, Ronald Burgess was operating the subject bus within the scope of his employment with Greyhound Lines, Inc. and with the permission of Greyhound Lines, Inc.

3

SIXTEENTH: Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 16 of the plaintiff's Complaint except admits that on August 28, 2006 the plaintiff was a passenger on the subject bus.

SEVENTEENTH: Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 17 of the plaintiff's Complaint except admits that on August 28, 2006 the subject bus was traveling northbound on Interstate 87 in or near Elizabethtown, New York.

EIGHTEENTH: Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 18 of the plaintiff's Complaint.

NINETEENTH: Denies each and every allegation contained in Paragraph No. 19 of the plaintiff's Complaint.

TWENTIETH: Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 20 of the plaintiff's Complaint.

TWENTY-FIRST: Denies each and every allegation contained in Paragraph No. 21 of the plaintiff's Complaint and respectfully refers all questions of law to the determination of the Trial Court.

TWENTY-SECOND: Denies each and every allegation contained in Paragraph No. 22 of the plaintiff's Complaint.

TWENTY-THIRD: Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 23 of the plaintiff's Complaint.

TWENTY-FOURTH: Denies each and every allegation contained in Paragraph No. 24 of the plaintiff's Complaint.

4

TWENTY-FIFTH: Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 25 of the plaintiff's Complaint except admits that before August 28, 2006, Greyhound Lines, Inc. utilized MCI model 102 DL3 buses which did not come equipped with passenger seatbelts, including the subject bus.

TWENTY-SIXTH: Denies each and every allegation contained in Paragraph No. 26 of the plaintiff's Complaint.

TWENTY-SEVENTH: Denies each and every allegation contained in Paragraph No. 27 of the plaintiff's Complaint.

## ANSWERING THE FIRST CAUSE OF ACTION
## - NEGLIGENCE AGAINST GREYHOUND

TWENTY-EIGHTH:  In response to Paragraph No. 28 of the plaintiff's Complaint, defendant, Greyhound Lines, Inc., repeats, reiterates and realleges each and every assertion and denial contained in Paragraph Nos. FIRST through TWENTY-SEVENTH hereinabove as though more fully set forth at length herein.

TWENTY-NINTH: Denies each and every allegation contained in Paragraph No. 29 of the plaintiff's Complaint and respectfully refers all questions of law to the determination of the Trial Court.

THIRTIETH: Denies each and every allegation contained in Paragraph No. 30 of the plaintiff's Complaint.

THIRTY-FIRST: Denies each and every allegation contained in Paragraph No. 31 of the plaintiff's Complaint.

THIRTY-SECOND: Denies each and every allegation contained in Paragraph No. 32 of the plaintiff's Complaint.

386688.1

THIRTY-THIRD:  Denies each and every allegation contained in Paragraph No. 33 of the plaintiff's Complaint and respectfully refers all questions of law to the determination of the Trial Court.

THIRTY-FOURTH:  Denies each and every allegation contained in Paragraph No. 34 of the plaintiff's Complaint.

THIRTY-FIFTH:  Denies each and every allegation contained in Paragraph No. 35 of the plaintiff's Complaint and respectfully refers all questions of law to the determination of the Trial Court.

THIRTY-FIFTH a.    Denies each and every allegation contained in Paragraph No. 35a of the plaintiff's Complaint and respectfully refers all questions of law to the determination of the Trial Court.

THIRTY-FIFTH b.    Denies each and every allegation contained in Paragraph No. 35b of the plaintiff's Complaint and respectfully refers all questions of law to the determination of the Trial Court.

THIRTY-FIFTH c.    Denies each and every allegation contained in Paragraph No. 35c of the plaintiff's Complaint and respectfully refers all questions of law to the determination of the Trial Court.

THIRTY-FIFTH d.    Denies each and every allegation contained in Paragraph No. 35d of the plaintiff's Complaint and respectfully refers all questions of law to the determination of the Trial Court.

THIRTY-FIFTH e.    Denies each and every allegation contained in Paragraph No. 35e of the plaintiff's Complaint and respectfully refers all questions of law to the determination of the Trial Court.

6

THIRTY-FIFTH f.    Denies each and every allegation contained in Paragraph No. 35f of the plaintiff's Complaint and respectfully refers all questions of law to the determination of the Trial Court.

## ANSWERING THE SECOND CAUSE OF ACTION - NEGLIGENCE AGAINST GOODYEAR

THIRTY-SIXTH:    In response to Paragraph No. 36 of the plaintiff's Complaint, defendant, Greyhound Lines, Inc., repeats, reiterates and realleges each and every assertion and denial contained in Paragraph Nos. FIRST through THIRTY-FIFTH f hereinabove as though more fully set forth at length herein.

THIRTY-SEVENTH:    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 37 of the plaintiff's Complaint.

THIRTY-EIGHTH:    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 38 of the plaintiff's Complaint.

THIRTY-NINTH:    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 39 of the plaintiff's Complaint.

FORTIETH:    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 40 of the plaintiff's Complaint.

FORTY-FIRST:    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 41 of the plaintiff's Complaint.

FORTY-SECOND:    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 42 of the plaintiff's Complaint.

FORTY-THIRD:    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 43 of the plaintiff's Complaint.

7

FORTY-FOURTH:  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 44 of the plaintiff's Complaint and respectfully refers all questions of law to the determination of the Trial Court.

FORTY-FOURTH a:  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 44a of the plaintiff's Complaint and respectfully refers all questions of law to the determination of the Trial Court.

FORTY-FOURTH b:  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 44b of the plaintiff's Complaint and respectfully refers all questions of law to the determination of the Trial Court.

FORTY-FOURTH c:  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 44c of the plaintiff's Complaint and respectfully refers all questions of law to the determination of the Trial Court.

FORTY-FOURTH d:  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 44d of the plaintiff's Complaint and respectfully refers all questions of law to the determination of the Trial Court.

FORTY-FOURTH e:  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 44e of the plaintiff's Complaint and respectfully refers all questions of law to the determination of the Trial Court.

FORTY-FOURTH f:  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 44f of the plaintiff's Complaint and respectfully refers all questions of law to the determination of the Trial Court.

8

## ANSWERING THE THIRD CAUSE OF ACTION
## - STRICT PRODUCT LIABILITY

FORTY-FIFTH:  In response to Paragraph No. 45 of the plaintiff's Complaint, defendant, Greyhound Lines, Inc., repeats, reiterates and realleges each and every assertion and denial contained in Paragraph Nos. FIRST through FORTY-FOURTH f hereinabove as though more fully set forth at length herein.

FORTY-SIXTH:  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 46 of the plaintiff's Complaint.

FORTY-SEVENTH:  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 47 of the plaintiff's Complaint.

FORTY-EIGHTH:  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 48 of the plaintiff's Complaint.

FORTY-NINTH:  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 49 of the plaintiff's Complaint.

FIFTIETH:  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 50 of the plaintiff's Complaint.

FIFTY-FIRST:  Denies each and every allegation contained in Paragraph No. 51 of the plaintiff's Complaint and respectfully refers all questions of law to the determination of the Trial Court.

FIFTY-FIRST a:  Denies each and every allegation contained in Paragraph No. 51a of the plaintiff's Complaint and respectfully refers all questions of law to the determination of the Trial Court.

9

FIFTY-FIRST b:  Denies each and every allegation contained in Paragraph No. 51b of the plaintiff's Complaint and respectfully refers all questions of law to the determination of the Trial Court.

FIFTY-FIRST c:  Denies each and every allegation contained in Paragraph No. 51c of the plaintiff's Complaint and respectfully refers all questions of law to the determination of the Trial Court.

FIFTY-FIRST d:  Denies each and every allegation contained in Paragraph No. 51d of the plaintiff's Complaint and respectfully refers all questions of law to the determination of the Trial Court.

FIFTY-FIRST e:  Denies each and every allegation contained in Paragraph No. 51e of the plaintiff's Complaint and respectfully refers all questions of law to the determination of the Trial Court.

FIFTY-FIRST f:  Denies each and every allegation contained in Paragraph No. 51f of the plaintiff's Complaint and respectfully refers all questions of law to the determination of the Trial Court.

## ANSWERING THE FOURTH CAUSE OF ACTION - BREACH OF WARRANTIES

FIFTY-SECOND:   In response to Paragraph No. 52 of the plaintiff's Complaint, defendant, Greyhound Lines, Inc., repeats, reiterates and realleges each and every assertion and denial contained in Paragraph Nos. FIRST through FIFTY-FIRST f hereinabove as though more fully set forth at length herein.

FIFTY-THIRD:  Denies each and every allegation contained in Paragraph No. 53 of the plaintiff's Complaint and respectfully refers all questions of law to the determination of the Trial Court.

10

FIFTY-FOURTH:  Denies each and every allegation contained in Paragraph No. 54 of the plaintiff's Complaint.

FIFTY-FIFTH:  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 55 of the plaintiff's Complaint

FIFTY-SIXTH:  Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 56 of the plaintiff's Complaint

FIFTY-SEVENTH:  Denies each and every allegation contained in Paragraph No. 57 of the plaintiff's Complaint and respectfully refers all questions of law to the determination of the Trial Court.

FIFTY-SEVENTH a:  Denies each and every allegation contained in Paragraph No. 57a of the plaintiff's Complaint and respectfully refers all questions of law to the determination of the Trial Court.

FIFTY-SEVENTH b:  Denies each and every allegation contained in Paragraph No. 57b of the plaintiff's Complaint and respectfully refers all questions of law to the determination of the Trial Court.

FIFTY-SEVENTH c:  Denies each and every allegation contained in Paragraph No. 57c of the plaintiff's Complaint and respectfully refers all questions of law to the determination of the Trial Court.

FIFTY-SEVENTH d:  Denies each and every allegation contained in Paragraph No. 57d of the plaintiff's Complaint and respectfully refers all questions of law to the determination of the Trial Court.

11

FIFTY-SEVENTH e:  Denies each and every allegation contained in Paragraph No. 57e of the plaintiff's Complaint and respectfully refers all questions of law to the determination of the Trial Court.

FIFTY-SEVENTH f:  Denies each and every allegation contained in Paragraph No. 57f of the plaintiff's Complaint and respectfully refers all questions of law to the determination of the Trial Court.

## ANSWERING THE FIFTH CAUSE OF ACTION - PUNITIVE DAMAGES

FIFTY-EIGHTH:    In response to Paragraph No. 58 of the plaintiff's Complaint, defendant, Greyhound Lines, Inc., repeats, reiterates and realleges each and every assertion and denial contained in Paragraph Nos. FIRST through FIFTY-SEVENTH f hereinabove as though more fully set forth at length herein.

FIFTY-NINTH:  Denies each and every allegation contained in Paragraph No. 59 of the plaintiff's Complaint and respectfully refers all questions of law to the determination of the Trial Court.

FIFTY-NINTH a:  Denies each and every allegation contained in Paragraph No. 59a of the plaintiff's Complaint and respectfully refers all questions of law to the determination of the Trial Court.

FIFTY-NINTH b:  Denies each and every allegation contained in Paragraph No. 59b of the plaintiff's Complaint and respectfully refers all questions of law to the determination of the Trial Court.

FIFTY-NINTH c:  Denies each and every allegation contained in Paragraph No. 59c of the plaintiff's Complaint and respectfully refers all questions of law to the determination of the Trial Court.

12

FIFTY-NINTH d: Denies each and every allegation contained in Paragraph No. 59d of the plaintiff's Complaint and respectfully refers all questions of law to the determination of the Trial Court.

FIFTY-NINTH e: Denies each and every allegation contained in Paragraph No. 59e of the plaintiff's Complaint and respectfully refers all questions of law to the determination of the Trial Court.

FIFTY-NINTH f: Denies each and every allegation contained in Paragraph No. 59f of the plaintiff's Complaint and respectfully refers all questions of law to the determination of the Trial Court.

SIXTIETH: Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 60 of the plaintiff's Complaint and respectfully refers all questions of law to the determination of the Trial Court.

SIXTIETH a: Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 60a of the plaintiff's Complaint and respectfully refers all questions of law to the determination of the Trial Court.

SIXTIETH b: Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 60b of the plaintiff's Complaint and respectfully refers all questions of law to the determination of the Trial Court.

SIXTIETH c: Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 60c of the plaintiff's Complaint and respectfully refers all questions of law to the determination of the Trial Court.

13

SIXTIETH d: Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 60d of the plaintiff's Complaint and respectfully refers all questions of law to the determination of the Trial Court.

SIXTIETH e: Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 60e of the plaintiff's Complaint and respectfully refers all questions of law to the determination of the Trial Court.

SIXTIETH f: Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 60f of the plaintiff's Complaint and respectfully refers all questions of law to the determination of the Trial Court.

SIXTY-FIRST: Denies each and every allegation contained in Paragraph No. 61 of the plaintiff's Complaint.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

SIXTY-SECOND: Upon information and belief, any damages sustained by the plaintiff herein were not caused by any negligence or carelessness on the part of Greyhound Lines, Inc., its servants, agents or employees, but were caused solely by the negligence and carelessness of the plaintiff and that such conduct requires diminution of any award, verdict or judgment that plaintiff may recover against Greyhound Lines, Inc..

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

SIXTY-THIRD: Notwithstanding that Greyhound Lines, Inc. has denied liability herein, in the event that liability is found, the liability of Greyhound Lines, Inc. shall be fifty percent or less of the total liability assigned to all persons liable and pursuant to New York Civil Practice Law and Rules ("CPLR") §1601 et seq., or any similar applicable law, the liability of Greyhound Lines, Inc. for non-economic loss shall not exceed its equitable share determined in accordance

14

with the relative culpability of each person causing or contributing to the total liability of non-economic loss.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

SIXTY-FOURTH: That to the extent the plaintiff recovers any damages for the cost of medical care, dental care, custodial care or rehabilitation services, loss of earnings and/or other economic loss, the amount of the award shall be reduced by the sum total of all collateral reimbursements, from whatever source, whether it be insurance, social security payments, Workers' Compensation, employee benefits or other such programs, in accordance with the provisions of the CPLR §4545 or any similar applicable law.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

SIXTY-FIFTH: Upon information and belief, the injuries sustained by plaintiff are such that they do not fall within the requirements of Insurance Law §51-02, et seq. or any similar no-fault threshold law.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

SIXTY-SIXTH: The Fourth Cause of Action fails to state a claim upon which relief can be granted as against defendant Greyhound Lines, Inc.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

SIXTY-SEVENTH: The Fifth Cause of Action fails to state a claim upon which relief can be granted as against defendant Greyhound Lines, Inc.

## AS AND FOR AN SEVENTH AFFIRMATIVE DEFENSE

SIXTY-EIGHTH: Some of the claims and or theories of liability made by the plaintiff in this action, including but not necessarily limited to those pertaining to seatbelts, windows and the roof the subject bus, are preempted and prohibited. To the extent the Causes of Action in this

action are based upon these preempted theories of liability, or any other pre-empted theory of liability, said Causes of Actions fail to state a claim for which relief can be granted.

<u>**AS AND FOR A EIGHTH AFFIRMATIVE DEFENSE**</u>

SIXTY-NINTH:  The law of one or more jurisdictions, states and/or other countries, besides the State of New York, may be applicable to all or portions of the claims or defenses made by some or all of the various parties in this litigation.

<u>**AS AND FOR A FIRST CROSS-CLAIM**</u>
<u>**AGAINST CO-DEFENDANT**</u>
<u>**THE GOODYEAR TIRE and RUBBER COMPANY ("GOODYEAR")**</u>

(COMMON LAW INDEMNIFICATION)

SEVENTIETH:  Defendant, Greyhound Lines, Inc., repeats and realleges each and every allegation set forth above in paragraphs ONE through SIXTY-NINTH as though fully set forth at length herein.

SEVENTY-FIRST:  Before August 28, 2006 Greyhound Lines, Inc. and GOODYEAR TIRE & RUBBER COMPANY (hereinafter referred to as "GOODYEAR") entered into an Agreement dated October 3, 2000.  Greyhound Lines, Inc. begs leave to refer to the Agreement for its complete terms and conditions.

SEVENTY-SECOND:   Paragraph 2 of the Agreement, entitled "Lease of Tires," provides in part that "Goodyear will furnish Greyhound tires for use on the entire fleet of buses operated by Greyhound…" and that "Goodyear commits to produce a new tire that will meet Greyhound's fleet requirements…"

SEVENTY-THIRD: Paragraph 6 of the Agreement, entitled "Title to Tires and Liens on Buses", provides in part that "[t]itle to all tires furnished hereunder shall remain at all times in Goodyear…"

16

SEVENTY-FOURTH:  Paragraph 11 of the Agreement, entitled "Service", provides in part: "(a) Goodyear warrants and promises that all tires provided to Greyhound will be of sufficient grade, quality, and standard to permit reasonable and safe use and operation on Greyhound's buses."

SEVENTY-FIFTH:  Paragraph 11 (c) of the Agreement provides in part that "tire service to be performed by Goodyear will be performed in accordance with Exhibit "C" attached" to the Agreement.

SEVENTY-SIXTH:  The Agreement contains of various Exhibits, including Exhibit "C". Exhibit "C" is entitled Procedure Guideline No.:  PB K-91 (hereinafter referred to as "the K-91").  Greyhound Lines, Inc. begs leave to refer to the Agreement and all of its attachments and Exhibits for their complete terms and conditions.  (The Agreement, including all Exhibits of the Agreement, are hereinafter collectively referred to as "the Agreement".)

SEVENTY-SEVENTH:  Paragraph 12 of the Agreement, entitled "Training", provides in part that "Goodyear agrees to provide training, to include but not limited to the proper safety, reliability, and maintenance procedures for the tires".

SEVENTY-EIGHTH:   Paragraph 9 of the Agreement, entitled "Contingencies and Indemnity", provides in part that: "Goodyear agrees to defends, save and hold Greyhound harmless from claims and actions resulting from the use or possession of the tires furnished hereunder caused by the sole negligence of Goodyear"; and "Goodyear will indemnify, save harmless, and defend Greyhound…from and against liability, losses, claims, demands, suits, and judgments, and from costs and expenses, including the reasonable fees of counsel therewith, arising or as a result of the negligence of GOODYEAR or its agents or employees".

17

SEVENTY-NINTH: On August 28, 2006 a bus ("the subject bus") carrying passengers, including the plaintiff, and driven by Ronald Burgess, an employee of Greyhound Lines, Inc., was traveling on I-87 in New York when it left the roadway of I-87 and was involved in an accident ("the subject accident").

EIGHTIETH: At the time of the subject accident the subject bus was equipped model G409 Goodyear tires (hereinafter referred to as "G409 tires"), including the left front steer tire on the subject bus (hereinafter "the left front tire").

EIGHTY-FIRST: At the time of the subject accident, and at all times prior thereto, GOODYEAR owned the G409 tires including the left front tire.

EIGHTY-SECOND: Greyhound Lines, Inc. leased the G409 tires, including the left front tire, from GOODYEAR.

EIGHTY-THIRD: GOODYEAR designed the G409 tires, including the left front tire.

EIGHTY-FOURTH: GOODYEAR constructed, assembled, fabricated and manufactured the G409 tires, including the left front tire.

EIGHTY-FIFTH: In the plaintiff's Complaint the plaintiff alleges, among other things, that: GOODYEAR designed, developed, inspected, marketed, sold, leased and maintained the tires used on the bus upon which the plaintiff was riding at the time of the accident at issue in this case (paragraph 10); on or about August 28, 2006 "a tire on the subject bus failed to operate as intended" (paragraph 18); "Goodyear was negligent in the design, manufacture, assembly, testing, labeling, instruction and/or inspection and warnings of and related to the tire, its component parts and/or equipment, and further sold, supplied, distributed, promoted and/or placed into the market and/or stream of commerce, defective and dangerous products without proper testing, inspection or warning thereof" (paragraph 39); "on August 28, 2006, the subject

18

tire was being used for its intended purpose" (paragraph 42); "the subject tire was unfit for its intended purpose" (Paragraph 42); "Goodyear breached the duties of care it owed...by negligently designing, developing, manufacturing, maintaining, managing, controlling and leasing the subject tire" (paragraph 43); "the subject tire was defectively and improperly designed, manufactured, assembled and/or labeled by Goodyear" (paragraph 46); "the subject tire was sold, distributed and marketed in a defective and unreasonably dangerous condition and/or was unfit for its intended use" (paragraph 47); "Goodyear failed to warn of the propensities of its tire to fail under conditions similar to those encountered at the date and time of the accident" (paragraph 48); "at the time that the subject tire left Goodyear's control it was defective and unreasonably dangerous and/or unfit for its intended use" (paragraph 49) and "Goodyear breach its express and implied warranties by failing to provide safe, reliable and appropriate tires for passengers on the subject bus" (paragraph 56).

EIGHTY-SIXTH: Although Greyhound Lines, Inc. has denied the plaintiff's allegations regarding its liability and damages claims, Greyhound Lines, Inc. is nevertheless exposed to damage by reason of a possible verdict or judgment.

EIGHTY-SEVENTH: By reason of exposure to damage this cross-claim is made against GOODYEAR by reason of, among other things, GOODYEAR's: wrongful conduct; acts; omissions; negligence, carelessness and/or recklessness (including but not limited to negligence, carelessness and/or recklessness in the design, construction, assembly, fabrication, manufacture, service, maintenance and/or repair of the G409 tires including the left front tire); breach of the Agreement; breach of contract; breach of warranties (including but not limited to those in the Agreement and/or those created by operation of law); and/or strict products liability.

19

EIGHTY-EIGHTH:  That although Greyhound Lines, Inc. has denied the allegations of wrongdoing asserted against it by the plaintiff, nevertheless, should said defendant be found liable to the plaintiff, such liability will have been the result of the active and affirmative wrongdoing of co-defendant, GOODYEAR, while the wrongdoing of Greyhound Lines, Inc. will have been passive and secondary.

EIGHTY-NINTH:  By reason of all of the foregoing, Greyhound Lines, Inc. is entitled to full indemnity from co-defendant, GOODYEAR.

### AS AND FOR A SECOND CROSS-CLAIM
### AGAINST CO-DEFENDANT
### THE GOODYEAR TIRE and RUBBER COMPANY ("GOODYEAR")

(CONTRIBUTION)

NINETIETH:  Defendant, Greyhound Lines, Inc. repeats and realleges each and every allegation set forth above in paragraphs ONE through EIGHTY-NINTH as though fully set forth at length herein.

NINETY-FIRST:  That although Greyhound Lines, Inc. has denied the allegations of wrongdoing asserted against it by the plaintiff, nevertheless, should said defendant be found liable to the plaintiff and should said defendant not be awarded full indemnity on the first cross-claim of this Answer to the plaintiff's Complaint, then Greyhound Lines, Inc. is entitled to an apportionment of fault against co-defendant, GOODYEAR, in proportion to the relative degrees of fault or wrongdoing among the parties to this action or as otherwise provided under Articles 14 and 16 of the CPLR or any similar applicable law.

NINETY-SECOND:  By reason of the foregoing, Greyhound Lines, Inc. is entitled to contribution and/or partial indemnity from the co-defendant, GOODYEAR, in accordance with

20

the relative degrees of fault or wrongdoing of the parties to this action or as otherwise provided under Articles 14 and 16 of the CPLR or any similar applicable law.

## AS AND FOR A THIRD CROSS-CLAIM
## AGAINST CO-DEFENDANT
## THE GOODYEAR TIRE and RUBBER COMPANY ("GOODYEAR")

### (CONTRACTUAL INDEMNIFICATION)

NINETY-THIRD:  Defendant, Greyhound Lines, Inc., repeats and realleges each and every allegation above set forth in paragraphs ONE through NINETY-SECOND as though fully set forth at length herein.

NINETY-FOURTH:  That pursuant to the Agreement made by and between Greyhound Lines, Inc., on the one part, and co-defendant, GOODYEAR, on the other part, co-defendant, GOODYEAR undertook to indemnify, fully or partially, Greyhound Lines, Inc. for loss, claims and/or damage arising out of or in connection with the aforesaid Agreement.  Greyhound Lines, Inc. begs leave to refer to the Agreement for its complete terms and conditions.

NINETY-FIFTH:  By reason of all of the above and the Agreement, Greyhound Lines, Inc. is entitled to either complete indemnification or partial indemnity by contract from co-defendant, GOODYEAR for any verdict, judgment or settlement reached in this action against Greyhound Lines, Inc., together with costs, expenses, disbursements and attorneys' fees.

## AS AND FOR A FOURTH CROSS-CLAIM AGAINST CO-DEFENDANT THE
## GOODYEAR TIRE and RUBBER COMPANY ("GOODYEAR")

### (PROPERTY DAMAGE/ECONOMIC LOSS)

NINETY-SIXTH:  Defendant, Greyhound Lines, Inc., repeats and realleges each and every allegation above set forth in paragraphs ONE through NINETY-FIFTH as though fully set forth at length herein.

386688.1

NINETY-SEVENETH:    Before the subject accident, the subject bus was leased by Greyhound Lines, Inc. from the Bank of Oklahoma, N.A. pursuant to a Master Lease Agreement dated February 16, 2000 (hereinafter referred to as "the Master Lease").    Greyhound Lines, Inc. begs leave to refer to the Master Lease at the time of trial.

NINETY-EIGHTH:    The Master Lease was in effect at the time of the subject accident.

NINETY-NINTH:    After the subject accident, and pursuant to the terms of the Master Lease, Greyhound Lines, Inc. replaced the subject bus with another bus of the same type and manufacturer that was owned by Greyhound Lines, Inc. (hereinafter referred to as "the replacement bus").

ONE-HUNDREDTH:    Pursuant to the terms of the Master Lease, Greyhound Lines, Inc. transferred title of the replacement bus to the Bank of Oklahoma, N.A.

ONE-HUNDRED-FIRST:    After and since the subject accident, and due to the subject accident, Greyhound Lines has paid and/or will continue to pay no-fault benefits.

ONE-HUNDRED-SECOND:    As a result of all of the foregoing, Greyhound Lines, Inc. has been damaged and continues to be damaged, and has sustained loss including but not limited to property damage, economic loss, business interruption, loss of revenue and loss of income.

ONE-HUNDRED-THIRD:    Greyhound, Lines, Inc.'s damages and losses as described above are due to, among other things, GOODYEAR's:    wrongful conduct; acts; omissions; negligence, carelessness and/or recklessness (including but not limited to negligence, carelessness and/or recklessness in the design, construction, assembly, fabrication, manufacturer, service, maintenance and/or repair of the G409 tires, including the left front tire); breach of the Agreement; breach of contract; breach of warranties (including but not limited to those in the Agreement and those created by operation of law); and/or strict products liability.

22

ONE-HUNDRED-FOURTH:  The amount in controversy pertaining to the damages and losses suffered by Greyhound Lines, Inc. exceeds $75,000 exclusive of interest.

ONE-HUNDRED-FIFTH:  Greyhound Lines, Inc. has been damaged and continues to be damaged by GOODYEAR's conduct and is entitled to damages in an amount in excess of $75,000.  Greyhound Lines, Inc. is entitled to recover all of the damages and losses described above from GOODYEAR.  Greyhound Lines, Inc. is also entitled to interest since the date of the subject accident.

WHEREFORE, defendant, GREYHOUND LINES, INC., demands:

1.    Judgment dismissing the plaintiff's Complaint;

2.    In the event that the plaintiff's Complaint is not dismissed, then full or partial indemnity with respect to the first and third cross-claims;

3.    In the event that full indemnity is not granted, then contribution pursuant to the second cross-claim in accordance with degrees of wrongdoing;

4.    Judgment against GOODYEAR on the fourth cross-claim in a sum in excess of $75,000 plus interest; and

5.    Together with the costs and disbursements of this action.

Dated:    **New York, New York**
          **June 2, 2008**

                              Yours, etc.,

                              **FABIANI COHEN & HALL, LLP**

                              **Kevin B. Pollak (KBP 6098)**
                              **Attorneys for Defendant**
                              **GREYHOUND LINES, INC.**
                              **570 Lexington Avenue, 4th Floor**
                              **New York, New York  10022**
                              **(212) 644-4420**

23

386688.1

TO:    LAW OFFICE OF MARK SCHNEIDER
        Attorneys for Plaintiff
        LAUREN BICKFORD-BUSHEY
        57 Court Street
        Plattsburgh, New York  12901
        Attention:  Mark Schneider, Esq.
        (518) 566-6666

        HERRICK, FEINSTEIN, LLP
        Attorneys for Defendant
        THE GOODYEAR TIRE &
         RUBBER COMPANY
        2 Park Avenue
        New York, New York  10016
        Attention:  Alan D. Kaplan, Esq.
        (212) 592-1400

24

386688.1